USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/3/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

JANOU PAKTER, JANOU LLC, and JP SEARCH, INC.,
formerly known as JANOU PAKTER,

                  Plaintiffs,

-v-

JANOU PAKTER, LLC,

                  Defendant.

------------------------------------------------------------- X

16 Civ. 4288 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This decision resolves the motion of defendant Janou Pakter LLC ("defendant")[1] asking the Court to reconsider its decision denying defendant's motion to vacate the default judgment this Court had entered against it in this trademark infringement action. That decision, issued on December 5, 2017 (the "December 5 Order"), reasoned that defendant had failed to take the steps the Court had directed be taken to justify vacating the default. In particular, defendant had not reimbursed plaintiffs for the fees and costs plaintiffs had incurred in connection with a post-default inquest into damages. Defendant, having now paid those fees and costs and having explained that defendant's failure to heed that order derived from defense counsel's having failed to correct the email address that had been given to the Court, now moves for reconsideration of that decision.

For the reasons that follow, the Court finds that defendant has now adequately cured the prejudice to plaintiffs occasioned by its defaults and has otherwise met the requirements, under

---

[1] Because the parties' names are similar, the Court refers to them as "plaintiffs" and "defendant."

1

Federal Rule of Civil Procedure 55(c), to set aside a default. Accordingly, the Court vacates its prior decision denying vacatur of the default judgment and now vacates the default judgment. This case will now move—expeditiously—to litigation on the merits.

**I.    Background**

The Court's December 5 Order, which the Court incorporates by reference, recounted the halting trajectory of this action. As relevant here, on March 29, 2017, the Court entered default judgment against defendant and referred the case to Magistrate Judge Gorenstein for an inquest into damages. Dkts. 24–25.

On June 15, 2017, for the first time, counsel for defendant appeared in this action, seeking an extension of time to respond to plaintiffs' proposed findings of fact and conclusions of law with respect to damages, and advising Judge Gorenstein that defendant intended to file a motion in this Court to vacate the default judgment. Dkts. 34–35. On June 16, 2017, defendant so moved, *see* Dkts. 37–40, and on June 30, 2017, plaintiffs filed a brief in opposition, Dkt. 43.

On November 20, 2017, this Court entered an order stating that it would "condition any vacatur of the default judgment on defendant's payment of the fees and costs plaintiffs reasonably incurred in the preparation of plaintiffs' proposed findings of fact and conclusions of law." Dkt. 45. The Court directed plaintiffs' counsel to submit by November 28, 2017, in a sworn declaration, an accounting of the fees and costs reasonably incurred in preparation of those filings. *Id.* The Court further ordered that, if defendant continued to seek vacatur of the default judgment, defense counsel was required to submit a response by Friday, December 1, 2017, "attesting to defendant's willingness to promptly upon vacatur of the default judgment reimburse plaintiff for all of those reasonably incurred fees and costs." *Id.* The Court advised

2

that, if the defendant were unwilling to bear those costs, the Court would "deny its motion to vacate the default judgment." *Id.*

On November 28, 2017, plaintiffs submitted the declaration of their counsel William B. Kerr, attesting to the fees and costs plaintiffs reasonably incurred in preparing their proposed findings of fact and conclusions of law. Dkt. 46. That declaration was supported by billing records which it attached. *Id.* The fees and costs totaled $20,607.59. *Id.* Defendant, however, did not pay these fees and costs (or respond to or otherwise acknowledge plaintiffs' submission).

In the December 5 Order, the Court, noting defendant's failure to commit to so reimburse plaintiff, held that defendant had failed to cure the prejudice to plaintiffs that vacating the default would cause. Accordingly, the Court denied the motion for vacatur.

On February 26, 2018, nearly three months later, defendant resurfaced. Its counsel, J. Gregory Lahr, submitted a letter explaining that he had just learned of the December 5 Order after the chambers of the Magistrate Judge newly assigned to the case, the Hon. Stewart Aaron, had inquired whether defendant intended to make a submission in connection with the inquest. Lahr sought leave, on defendant's behalf, to move for reconsideration of the December 5 Order. Dkt. 50. On February 27, 2018, the Court authorized Lahr to file such a motion, again conditioned on defendant's paying plaintiffs' attorneys' fees and costs. Dkt. 51.

On March 5, 2018, defendant submitted its motion for reconsideration, accompanied by a memorandum of law in support, Dkt. 54, and a declaration from Lahr, Dkt. 53 ("Lahr Decl."). In that declaration, Lahr attested that, on March 2, 2018, defendant had paid plaintiffs $20,607.59, the full sum that plaintiffs sought. Lahr Decl. at ¶ 10. On March 16, 2018, plaintiffs submitted their opposition in the form of a declaration of William B. Kerr. Dkt. 57 ("Kerr Decl.").

3

## II. Legal Standard

The Second Circuit has "advised district courts to consider three criteria in deciding a Rule 55(c) motion: (1) whether the default was willful; (2) whether setting aside the default would prejudice the party for whom default was awarded; and (3) whether the moving party has presented a meritorious defense." *Peterson v. Syracuse Police Dep't*, 467 F. App'x 31, 33 (2d Cir. 2012).[2] Prejudice to the non-defaulting party is "the single most persuasive reason for denying a Rule 55(c) motion . . . ." *Murray Eng'g, P.C. v. Windermere Properties LLC*, No. 12 CIV. 0052 JPO, 2013 WL 1809637, at *5 (S.D.N.Y. Apr. 30, 2013) (quoting 10A Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2699 (3d ed. 2010)). "In cases where substantial rights are implicated or when substantial sums of money are demanded, default judgments are particularly disfavored by the law." *Id.* at *3 (internal quotations omitted).

## III. Analysis

Although the question presented by defendant's motion for vacatur is a close one given the defense's lax approach to this lawsuit, the Court finds—given defendant's recompense of plaintiffs' attorneys' fees and costs as directed and given defense counsel's proffer of a colorable explanation for its failure to respond to the December 5 Order—that the three Rule 55(c) factors warrant setting aside the default judgment.

---

[2] As the Court explained in its December 5 Order, Rule 60(b) governs motions to set aside "final judgments," but a judgment is "final" only "when there is nothing left for the Court to adjudicate." *Globe Indem. Co. v. JT Falk & Co., Inc.*, No. 91 Civ. 0271 (PKL), 1992 WL 116630, at *3 (S.D.N.Y. May 15, 1992) (citing *Ginett v. Computer Task Grp., Inc.*, 962 F.2d 1085 (2d Cir. 1992)). "Therefore, it is the 'good cause' standard of Rule 55(c), as opposed to the more rigorous standards of Rule 60(b), that applies to a case such of this, where an inquest on damages has been ordered but has not yet taken place." *Murray Eng'g*, 2013 WL 1809637, at *3 (internal citations and quotations omitted); *see* December 5 Order at 4 n.3.

4

First, the default here, while a product of counsel's negligence and irresponsibility, was not willful. "The Second Circuit has 'interpreted "willfulness," in the context of a default, to refer to conduct that is more than merely negligent or careless.'" *Murray Eng'g*, 2013 WL 1809637, at *4 (quoting *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998)). Willfulness may be found where counsel has acted egregiously and without satisfactory explanation, *id.*, or where, even if counsel did not act in bad faith, "the defendant defaulted deliberately," *Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 635 (2d Cir. 1998).

The default here did not reach those standards. The defaulting behavior at issue here (not responding to the Court's November and December 2017 orders) was by defense counsel, not the defendant.[3] To be sure, counsel's attentiveness to this matter since first appearing on June 15, 2017 has left much to be desired. Defense counsel has explained that an incorrect email address was on file with this Court, and as a result, he did not receive notice of the filings after September 12, 2017, including the November 20 and December 5, 2017 orders. It goes without saying that that excuse, measured against standards of professionalism, is unsatisfactory. Counsel in this Court have an unflagging obligation both to maintain accurate contact information with the Court *and* separately to diligently oversee activity on the dockets in their cases. Counsel's failure to do the latter here was flagrant. Defense counsel took no action in this matter, and made no effort to monitor the docket, between June 15, 2017, when he moved to vacate the original default, and February 26, 2018, when he submitted a letter request seeking leave to file the instant motion for reconsideration. In between, defense counsel showed no spark of engagement with his client's cause, as even the slightest concern for the client's well-

---

[3] The initial default in this case was attributable to defendant—it stemmed from defendant's not having received actual notice of the service effected on the Delaware Secretary of State. *See* Dkt. 38 ¶ 5. That default, too, was not—and is not claimed to have been—willful.

5

being should have prompted counsel to check the docket of the case. And when defense counsel's attention was drawn to this matter, it was not because of newfound attentiveness on the part of defense counsel, but instead was a result of the conscientious initiative of Magistrate Judge Aaron, who reached out to see whether counsel intended to participate in the damages inquest.

Such passivity—allowing a case to languish for nearly nine months without so much as logging into ECF—is deeply disrespectful to the Court, opposing counsel, and counsel's own client. Counsel's inattention was particularly striking because it caused a *second* episode of default by the client. The defendant, after being served, had already failed to appear and respond for more than six months, leading to the entry of default judgment in March 2017. A lawyer entering a case where the client has been rescued from the brink of a fatal default can reasonably be expected to be particularly punctilious.

However, such carelessness does not rise to the level of willfulness or deliberateness, where, as here, there is a factual explanation for the lapse. As defendant's counsel explains, counsel's failure to respond to the November 20, Dkt. 45, and December 5, 2017, Dkt. 47, orders was the result of his firm's inaccurate updating of his email address on the Court's ECF system when counsel changed law firms in August 2017. Lahr Decl. ¶ 5. As a result of having a stale email address on file with the Court, counsel did not receive notice of either the November 20 or December 5 orders. Nor did defense counsel receive notice of plaintiffs' intervening submission, on November 28, 2017, tabulating their attorneys' fees and costs as the November 20 order had directed. *See* Dkt. 46. Case law in this District recognizes that episodes of such "law office failure," even if accompanied by negligence and passivity by counsel, may not rise to the level of willfulness. *E.g.*, *Cruz v. TD Bank, N.A.*, No. 10-CV-8026 PKC, 2015 WL 437393, at *3

6

(S.D.N.Y. Feb. 3, 2015); see CPLR § 2005. Here, notwithstanding the Court's dismay at the lack of vigor of counsel's representation, there is no reason to believe that counsel or the defendant deliberately ignored the deadlines set by this Court or sandbagged seeking strategic advantage. Accordingly, as to the first factor, the Court finds that defendant's default was not willful.

Even if willfulness were found, that factor alone would not require maintaining the default judgment. "A finding that one factor militates against good cause is not dispositive." *Murray Eng'g*, 2013 WL 1809637 at * 4 (citing *I.L. G.W.U. Nat. Ret. Fund v. Meredith Grey, Inc.*, 986 F. Supp. 816, 823 (S.D.N.Y. 1997) (fact of willfulness "relevant but not dispositive")). And where the default has heavy consequences—for example, where a finding of default on account of counsel could cause the client to lose a large sum of money—"good cause will be found unless these factors weight clearly in" plaintiffs' favor. *Id.* Such is the case here, where plaintiffs seek $1.1 million in the inquest before Judge Aaron.

As to the second factor, the Court finds that defendant has adequately cured the prejudice resulting from its default. In its December 5 Order, the Court explained that for prejudice to the plaintiff to justify the denial of a Rule 55(c) motion, "the plaintiff must demonstrate that any prejudice resulting from the defendant's default cannot be rectified in the Court in another manner were the default to be vacated." *Murray Eng'g*, 2013 WL 1809637, at *5. For this reason, the Court ordered plaintiffs to submit an accounting of the fees and costs they had incurred based on the initial entry of default, in particular, in connection with preparing their proposed findings of fact and conclusions of law. The Court also ordered defendant to attest to its willingness to promptly upon vacatur reimburse plaintiffs for such reasonably incurred costs. Dkt. 45. The defendant has now remitted to plaintiffs the full cost, as tabulated by plaintiffs, of

the fees and costs plaintiffs reasonably incurred in that endeavor. Lahr Decl. ¶ 10. The identifiable prejudice to plaintiffs has thus been cured. No substantial argument as to any other prejudice from the delay caused by the defense's lassitude (*e.g.*, the disappearance of evidence or the demise of witnesses) has been identified. Accordingly, the Court finds that the prejudice to plaintiffs has now been cured. And finding defendant in default, particularly where the lapse was counsel's and not the client's, is to be avoided where possible.

Plaintiffs contend that they would be further prejudiced by vacatur of defendant's default because defendant has "had more opportunity to further its damaging conduct as a result of its further delay." Kerr Decl. ¶ 10. But that argument assumes the merits outcome of this dispute. This litigation, which will now proceed on the merits, will determine whether the conduct of which the plaintiffs complain—including defendant's allegedly confusing use of the name "Janou Pakter"—constitute legally cognizable harms.

Finally, as to the third factor, a "defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993). "The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Id.* Here, while the Court does not prejudge the merits of this case, defendant's submissions have adequately pointed towards a colorable merits defense to justify moving forward to the merits. *See, e.g.*, Lahr Decl. ¶ 11.

## CONCLUSION

For the foregoing reasons, defendant's motion to vacate the December 5 Order and the default judgment entered against it is granted. The Clerk of Court is respectfully directed to

vacate the default judgment entered at Dkt. 24 and to vacate the Court's Opinion & Order at Dkt. 47.

The Court also hereby withdraws its order referring this matter to the Magistrate Judge for an inquest, Dkt. 25. The Court is grateful to Magistrate Judges Gorenstein and Aaron for their thoughtful attention to this matter.

The parties are directed to submit, by one week from today, a joint letter setting out the parties' proposed schedule—and a case management plan— for the timely litigation of this case on the merits. The Court expects such a plan to provide for all fact discovery to conclude by the end of July 2018 and any expert discovery to conclude by the end of August 2018. Upon receipt of that submission, the Court will promptly schedule an initial conference.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: April 3, 2018
New York, New York